ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br>PETICIONARIO<br><br>v.<br><br>LUIS MIGUEL ORTIZ BURGOS<br>RECURRIDO | TA2025CE00564 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm:<br>B IS2025G0001<br>B IS2025G0002<br>B IS2025G0003<br>B IS2025G0004<br>B LE2025G0152<br><br>Sobre:<br>Art. 130-A, C.P. (tres cargos)<br>Art. 130-H, C.P<br>Art. 59, Ley. Núm. 246-2011 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de octubre de 2025.

Comparece ante nos la Oficina del Procurador General de Puerto Rico, en representación del Pueblo de Puerto Rico (Peticionario), mediante el presente recurso de *certiorari,* acompañado de una *Urgente Solicitud en Auxilio de Jurisdicción.* Solicita tanto la revocación de la *Minuta-Resolución,* notificada el 25 de septiembre de 2025, así como la paralización de la inspección ocular que el Tribunal de Primera Instancia, Sala Superior de Aibonito (TPI o foro primario) autorizó y señaló a celebrarse, el 11 de octubre de 2025 a las 10:00 de la mañana.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y revocamos la *Minuta-Resolución* impugnada.

**I.**

Por hechos ocurridos durante los años 2019, 2020 y 2021, y, tras la celebración de la vista preliminar correspondiente, el Ministerio Público presentó tres (3) acusaciones en contra del Sr. Luis Miguel Ortiz Burgos (Sr. Ortiz Burgos o recurrido) por infringir el inciso (a) del Artículo 130 (agresión sexual contra una menor de edad) de la Ley Núm. 146-2012, Código Penal de Puerto Rico, 33 LPRA sec. 5191, más una (1) acusación por violentar el inciso (h) del referido Artículo, *supra.* Además, instó otra acusación en contra del Sr. Ortiz Burgos por quebrantar el Artículo 59 (Maltrato) de la entonces vigente Ley Núm. 246-2011, Ley para la Seguridad, Bienestar y Protección de Menores, 8 LPRA sec. 1174.[1]

Autorizada la etapa de descubrimiento de prueba, la defensa del Sr. Ortiz Burgos instó una *Moción al Amparo de la Regla 95 de las Reglas de Procedimiento Criminal.* En esta consignó una lista de requerimientos y de forma generalizada, utilizando un lenguaje similar al que emana del inciso (a)(4) de la Regla 95 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 95, entre otros, solicitó: "[a]cceso a todo objeto tangible, estructura o lugar relevante para realizar inspección física por la abogada del acusado, para preparar adecuadamente la defensa del acusado."[2] Además, expuso como súplica al foro primario que "ordene la producción y acceso a la evidencia solicitada."[3]

En su contestación, y atinente al acceso a todo objeto tangible invocado, el Peticionario hizo constar que, puso a la disposición del Recurrido la sortija color dorada con piedras zirconias. Asimismo, se opuso a la entrada de la defensa al hogar y vivienda de la presunta víctima, bajo el fundamento de que lo solicitado excede el alcance de la citada regla. Además, indicó que proveyó treinta y cinco (35) fotos

---

[1] La Ley Núm. 57-2023, Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de Menores, 8 LPRA secs. 1641 *et seq.,* derogó y sustituyó la Ley Núm. 246-2011.

[2] *Moción al Amparo de la Regla 95 de las de Procedimiento Criminal,* acápite 4(q).

[3] *Íd.*

del lugar, cumpliendo así, lo requerido al amparo de la Regla 95, *supra.*

En atención a lo antes y sobre otros asuntos de naturaleza interlocutoria, el TPI celebró una vista de estatus, el 11 de septiembre de 2025. Durante la audiencia, ambas partes argumentaron sobre la solicitud de la defensa de que se le permita realizar "una inspección ocular" de la escena del alegado crimen, a lo cual se opuso el Peticionario, por entender que excede el alcance de la Regla 95 de Procedimiento Criminal, *supra,* y que constituye una intromisión a la intimidad de la presunta perjudicada, tratándose de su residencia sin que se haya justificado. Además, por entender que, el Ministerio Público cumplió el requerimiento de descubrimiento de prueba al proveer treinta y cinco (35) fotos del lugar.

Evaluadas las posturas de ambas partes, sin exigir de la defensa un petitorio por escrito que puntualice el alcance y parámetros de la inspección, el foro primario decretó: "Ha Lugar la inspección ocular solicitada por la defensa. Se ordena citar a la Sra. Carla Cruz Centeno, dueña de la residencia, para determinar las medidas de la visita."[4] Surge de la *Minuta-Resolución* que el TPI expresó: "el lugar donde ocurrieron los hechos es pertinente".[5]

En desacuerdo, el Peticionario instó un petitorio de reconsideración ante el TPI mediante *Moción solicitando reconsideración a orden de inspección ocular a la residencia de la víctima de agresión sexual.* Reiteró que la solicitud de la defensa excede el alcance de la Regla 95, *supra,* y violenta el derecho a la intimidad de la presunta víctima. Arguyó que, no existe una necesidad real del Recurrido de inspeccionar el lugar de los hechos, el cual ha cambiado drásticamente desde su ocurrencia. Además, hizo referencia a las treinta y cinco (35) fotografías del lugar de los

---

[4] Véase, *Minuta-Resolución* notificada el 17 de septiembre de 2025. Anejo 6 de la Petición de *Certiorari.*
[5] *Íd.*

hechos, tomadas en el año 2022 por la Policía de Puerto Rico, que entregó a la defensa y que muestran cómo estaba el lugar de los hechos a esa fecha. Agregó que, el Recurrido no ha demostrado una necesidad real que justifique inspeccionar la casa donde aún vive la perjudicada para preparar su defensa, considerando que, él vivía en dicha residencia hasta la fecha en que se presentó la denuncia. En particular destacó que, las inspecciones oculares no tienen otro propósito que no sea auxiliar al jurado o al juez en la apreciación de la prueba, por lo que autorizar la inspección ocular es a destiempo.

En respuesta, el recurrido se opuso y durante la vista celebrada el 22 de septiembre de 2025, el foro primario denegó la solicitud de reconsideración del Peticionario, así como, un segundo petitorio que a esos efectos dicha parte formalizó en corte abierta. Según la *Minuta-Resolución,* el foro primario reiteró que "el lugar de los hechos es pertinente" y consideró, además, que "la defensa tiene derecho a ir a hacer su inspección ocular", la cual calendarizó para el sábado, 11 de octubre de 2025 a las 10:00 de la mañana. En particular, y sin establecer las medidas cautelares que verbalizó que impondría, el TPI decretó lo siguiente:

> [l]a defensa podrá llevar un investigador para tomar fotos. Si el Ministerio Público desea tener un funcionario presente podrá hacerlo. Se informa a la señora Cruz que la menor no tiene que estar presente y si ella no desea estar, deberá dejar a alguien de su confianza para que le dé disponibilidad a la licenciada y a su investigador a entrar a la residencia y fotografiar.

Inconforme, el Peticionario acude ante esta Curia mediante el presente recurso, acompañado de una moción en auxilio de jurisdicción. Le imputa al TPI lo siguiente:

> [e]l Tribunal de Primera Instancia incurrió en un craso error manifiesto de derecho y abusó de su discreción al autorizar una inspección ocular en la residencia de la víctima de abuso sexual, sin que el señor Ortiz Burgos hubiese demostrado la pertinencia, necesidad y materialidad de dicho descubrimiento de prueba, en exceso de lo permitido por la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II.

En cumplimiento con nuestro requerimiento, el 9 de octubre de 2025, el Recurrido comparece mediante una *Moción en*

*cumplimiento de orden de mostrar causa (Alegato del Recurrido).* Con el beneficio de las posturas de ambas partes, y la regrabación de las vistas celebradas el 11 y 22 de septiembre de 2025, resolvemos.

## II.

### A. *Certiorari*

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al.*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023).

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari.* La citada regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023); *Pueblo v. Rivera Montalvo*, 205 DPR 352 (2020).

**B. La Regla 95 y el descubrimiento de prueba**

Como es sabido, "[l]as Reglas de Procedimiento Criminal constituyen el vehículo procesal para garantizar el acceso a un proceso justo y equitativo."[6] *Pueblo v. Rodríguez González*, 202 DPR 258, 271 (2019). Nuestro ordenamiento jurídico reconoce a toda persona acusada el derecho a defenderse de una acusación criminal en su contra, mediante el descubrimiento de prueba. *Pueblo v. Sanders Cordero*, 199 DPR 827, 835 (2018). Al mismo tiempo, el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA, establece que ningún ser humano será privado de su libertad o propiedad sin un debido proceso de ley.

A esos efectos, el Alto Foro ha resuelto que "la capacidad de descubrir prueba de un acusado es consustancial con el derecho a defenderse adecuadamente."[7] *Íd.,* pág. 835. No obstante, el descubrimiento de prueba a favor del acusado, a pesar de ser amplio, no es absoluto o ilimitado. *Íd.,* pág. 838. De esta forma, la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95, regula el derecho del acusado a realizar un descubrimiento de prueba al disponer lo siguiente:

(a) El acusado presentará moción al amparo de esta Regla dentro en un término de cumplimiento estricto de veinte (20) días contados a partir de: i) la celebración del acto de lectura de acusación en los casos que se impute la comisión de un delito grave; o ii) la primera comparecencia del acusado al proceso asistido por el abogado que habrá de representarlo en el juicio, en los casos en que se impute la comisión de un

---

[6] Nota omitida.
[7] Nota omitida.

delito menos grave. En el caso que la persona acusada manifieste que se representará por derecho propio, el tribunal deberá advertirle desde cuándo comienza a discurrir el término establecido en esta regla, así como las consecuencias de su incumplimiento. Sometida la moción de la defensa conforme a lo dispuesto en esta regla, el tribunal ordenará al Ministerio Fiscal o a cualquier agencia o instrumentalidad pública que permita al acusado inspeccionar, copiar o fotocopiar el siguiente material o información que está en posesión, custodia o control del Ministerio Fiscal o a cualquier agencia o instrumentalidad pública:

(1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.

(2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de éstos.

(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.

(4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.

(5) El récord de convicciones criminales previas del acusado.

(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado. El descubrimiento de esta prueba estará sujeto a las siguientes condiciones:

(A) Que los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación;

(B) que no afecte la seguridad del Estado ni las labores investigativas de sus agentes policiacos, y

(C) la correspondiente moción del acusado sea presentada con suficiente antelación a la fecha señalada para la celebración del juicio, de manera que no haya innecesarias dilaciones en los procedimientos ni se produzcan molestias indebidas a los funcionarios del Estado.

(b) El Ministerio Fiscal revelará toda aquella evidencia exculpatoria del acusado que tenga en su poder.

(c) La defensa deberá incluir, junto con la solicitud de descubrimiento de prueba, las órdenes necesarias para solicitar el material o la información que prevee [sic] que el Ministerio Público no tendrá bajo su custodia, dirigidas a las personas o entidades que la poseen, custodian o controlan. El Ministerio Público deberá entregar la información y/o material solicitado que tenga bajo su custodia o control e informar al tribunal si existe algún material o información que le fue solicitada, pero que no se encuentra bajo su posesión, custodia o control, en cuyo caso el tribunal ordenará a la persona o entidad que la posea, custodie o controle, que la ponga a la disposición del acusado.

(d) No estarán sujetos a descubrimiento o inspección de la defensa los escritos de investigación legal, informes, memorandos, correspondencia u otros documentos internos que contengan opiniones, teorías o conclusiones del Ministerio Fiscal.

(e) Toda información y/o material que se pretenda solicitar y no esté enumerado en esta regla, deberá venir acompañado de una explicación sobre la necesidad o pertinencia que tiene el mismo para la defensa del acusado.

Como vemos, al amparo de la Regla 95, *supra,* al acusado se le permite inspeccionar objetos tangibles, estructuras o lugares relevantes a su defensa, entre otros. Sin embargo, el Alto Foro resolvió en *Pueblo v. Custodio Colón,* 192 DPR 567, 587-588 (2015) que, "no podía interpretarse que con solo invocar el debido proceso de ley se abrían las puertas para que el acusado solicitara cualquier tipo de descubrimiento de prueba al Ministerio Público." A esos efectos, el Tribunal Supremo añadió que, el derecho a descubrir prueba antes del juicio no es de rango constitucional, salvo que se trate de evidencia exculpatoria.

### III.

En su recurso, el Peticionario nos solicita que revoquemos el dictamen recurrido mediante el cual, el TPI autorizó al Recurrido a realizar una inspección ocular en el hogar de la presunta víctima, como el lugar en donde presuntamente ocurrieron los hechos objeto de esta acusación, que versa sobre un alegado patrón de agresión sexual y maltrato perpetrado contra su hijastra, entonces menor de edad. Esencialmente, el Peticionario argumenta que, a su entender, el TPI incidió al autorizar la referida inspección ocular sin necesidad o fundamento y, en su consecuencia, "minimizó e invalidó el derecho a la intimidad de la víctima".[8] Lo antes sin haber demostrado la pertinencia y materialidad de dicho descubrimiento de prueba. Arguye que, de esta forma, el TPI contravino el estándar que dispone la Regla 95, *supra,* y permitió así, una pesquisa exploratoria, indiscriminada y especulativa, toda vez que aceptó la aparente objeción generalizada a las treinta y cinco (35) fotografías suministradas a la defensa, sin requerir un petitorio conforme exige la Regla 95 (e), *supra.* Ante ello, sostuvo que, en la presente causa se reúnen los criterios en derecho que sostienen la expedición del auto de *certiorari* y revocación del dictamen.

---

[8] Énfasis suprimido.

En su alegato en oposición, el Recurrido expone que, el inciso (e) de la Regla 95, *supra,* obliga a la defensa a explicar la necesidad o pertinencia únicamente cuando se trate de una solicitud sobre información o material no enumerado en la referida regla. Expuso que, divulgar lo antes sugiere que tiene que divulgar al Peticionario su estrategia de defensa y el producto de su labor de abogada.

De su alegato en oposición, se desprende que, luego de reconocer que la alegada víctima tiene un derecho a la intimidad, **por vez primera**, el Recurrido se refiere a la inspección que procura como una "breve inspección", una "intromisión mínima", que no la priva de su dignidad y que "es cónsona con las protecciones constitucionales del acusado".[9] En cuanto a la normativa de *Pueblo v. Arocho,* 137 DPR 762 (1994), citada por el Peticionario, discutió que dicho caso es distinguible de la presente causa, en la medida en que, el derecho a la intimidad allí implicado se refiere a la evaluación psicológica pericial involuntaria de la alegada víctima, y por tanto, a su integridad personal; mientras que, en el caso de marras, lo que se pretende examinar es un bien inmueble sin que sea necesaria la presencia de la presunta víctima.

Hemos evaluado concienzudamente el recurso ante nos, con el beneficio de la regrabación de las vistas celebradas y colegimos que, el foro primario incidió en su proceder, por lo que se fundamenta que ejerzamos nuestra función y facultad revisora, en esta etapa de los procesos.

Comenzamos por puntualizar que, la solicitud de la inspección ocular al hogar de la presunta víctima, lugar de los hechos, que solicitó el Recurrido corresponde a la petición expuesta en la moción presentada por la defensa, al amparo de la Regla 95 de Procedimiento Criminal, *supra,* dirigida a descubrir la prueba que ostenta el Estado en su contra, en la etapa previa al juicio. Al acceder a tal pretensión, el foro primario ignoró que, la "inspección

---

[9] *Moción en cumplimiento de orden de mostrar causa (Alegato del Recurrido),* págs. 17-18.

ocular" es reglamentada por la Regla 134 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 134, que constituye un remedio para la etapa del juicio, dirigido a auxiliar al juez o al jurado en la correcta apreciación de la prueba ante sí. *Pueblo v. Pagán Díaz,* 111 DPR 608, 617 (1981). De todas formas, al justipreciar la única moción presentada por la defensa al amparo de la Regla 95, colegimos que, el TPI no distinguió correctamente los parámetros de la inspección *vis a vis* el alcance de la Regla 95, *supra.*

Aclarado lo anterior, destacamos que, el Recurrido no acreditó en su *Moción al Amparo de la Regla 95 de las Reglas de Procedimiento Criminal* cuál es la necesidad de inspeccionar el lugar de los hechos, que es también la residencia de la presunta víctima. Tampoco, el Recurrido plasmó por escrito o presentó fundamentos específicos durante las vistas de estatus celebradas el 11 y 22 de septiembre de 2025. Con la anuencia verbalizada del foro primario, y so pretexto de contribuir a la discusión en sala, el TPI concluyó sobre la alegada pertinencia sin conocer los parámetros de la solicitud propiamente, y así prescindió de requerir a la defensa justificar en qué consistía esa necesidad y materialidad, a pesar de que la defensa tiene acceso a las treinta y cinco treinta y cinco (35) fotografías que le proveyó el Peticionario. Asimismo, el TPI ignoró la aceptada familiaridad del Recurrido con el referido inmueble y la fecha de los hechos imputados y no al presente, abstrayéndose así de efectuar un justo balance del petitorio de la defensa con el derecho a la intimidad y privacidad de la presunta víctima.

No obstante lo anterior, el foro primario declaró ha lugar a la solicitud del Recurrido y autorizó a la defensa a inspeccionar la residencia de la presunta perjudicada el sábado, 11 de octubre de 2025. Ello, a pesar de haber advenido en conocimiento de que ese fin de semana es el cumpleaños de la alegada víctima.[10] Lo antes, sin el juzgador establecer ningún tipo de salvaguarda o medida

---

[10] Así lo verbalizó la madre de la presunta perjudicada durante la vista de estatus celebrada el 22 de septiembre de 2025.

protectora con respecto a cómo debía realizarse dicha inspección. Tampoco, el TPI requirió de la defensa cómo se proponía a descubrir o inspeccionar el lugar de los hechos. Más bien, el foro primario descartó los planteamientos de intimidad que pretendía invocar el Peticionario, sin evaluar de forma fehaciente todos los argumentos, y tras rechazar por inaplicable la jurisprudencia sobre la cual sustentó el Estado su postura. A pesar de la objeción del Peticionario a la inspección ocular, el foro primario no requirió que la defensa formalizara sus argumentos y fundamentos por escrito. Incluso, el TPI concluyó sin más, sobre la inequívoca pertinencia de inspeccionar el lugar de los hechos. Observamos que, el Recurrido ofreció una objeción generalizada a utilizar las fotos que le proveyó el Peticionario.

Basado en lo antes, colegimos que, el foro primario accedió a la solicitud de inspección ocular basado en la objeción de forma generalizada del Recurrido a las treinta y cinco (35) fotos en su posesión. En su consecuencia, abrió las puertas de la morada de la presunta víctima de agresión sexual, para que la defensa del acusado y un tercero, que dicha parte tenga a bien seleccionar como "investigador", entre a dicho hogar, tome fotografías y lo inspeccione a su antojo, sin que el foro primario hubiese definido o delimitado el alcance de dicha inspección en tiempo o forma y sin requerir ninguna otra medida cautelar o presencia de un funcionario del Ministerio Público. Apreciamos de las regrabaciones que, el foro primario expuso que era necesario tomar medidas cautelares, pero en efecto nunca lo hizo. Lo antes, so color de que, "el lugar de los hechos siempre es pertinente".[11] Sin duda, el foro primario se extralimitó al ejercer su discreción, al entender sobre la causa delicada ante su consideración.

---

[11] Así lo verbalizó el foro primario durante la vista de estatus celebrada el 22 de septiembre de 2025.

En su alegato en oposición, el Recurrido argumenta que, divulgar la pertinencia o materialidad de la inspección equivale a anunciar su estrategia de defensa. Lo antes, para justificar no tener que exponer la materialidad de su petitorio. Sin embargo, habida cuenta de que el Peticionario se opuso a la inspección, en consideración a los derechos en conflicto y debido a que las Reglas de Evidencia aplican a esta etapa de los procesos, no procede el referido planteamiento como cuestión de derecho.

Ciertamente, la escena de un crimen podría ser pertinente a los hechos de un caso. Sin embargo, de un examen del pliego acusatorio no se desprende, en esta etapa de los procesos, que el hogar de la presunta víctima resulta como un elemento de los delitos aquí imputados, que requiera ser probado. No obstante, lo anterior reconocemos que, la Regla 95 contempla las estructuras o lugares pertinentes. Sin embargo, nos resulta evidente que, cuando el lugar de los hechos es también el hogar de la presunta víctima, se crea un choque entre el derecho a la intimidad de esta última y el derecho del acusado a tener acceso a una estructura o lugar relevante para preparar adecuadamente su defensa. Nótese que, el derecho a la intimidad no se limita a los seres humanos, se extiende a sus documentos y demás pertenencias. *Pueblo v. Ferreira Morales,* 147 DPR 238, 248-249 (1998).[12] Además, en *Pueblo v. Arocho Soto,* supra, a la pág. 767, el Tribunal Supremo dictaminó que el derecho del acusado a un descubrimiento de prueba "está particularmente limitado cuando incide sobre el derecho a la intimidad de la víctima u de otro testigo." Si bien es cierto que lo antes fue en el contexto de un derecho a la intimidad invocado ante una evaluación psicológica involuntaria, distinguible del caso de marras, el análisis expuesto

---

[12] A modo persuasivo, hacemos referencia a lo resuelto por un panel hermano (Recurso Núm. KLCE202301164) ante unos hechos similares, razonó que el foro primario ordenó la inspección del hogar de la presunta víctima sin antes pasar juicio sobre la necesidad de lo solicitado, y con ello, rebasó el texto de la Regla 95, *supra,* y trastocó el derecho a la intimidad que le asiste a la presunta perjudicada en su residencia. Concluyó además que, al así actuar, el TPI no aseguró un balance justo y adecuado entre los intereses del Peticionario y los derechos del Recurrido.

sobre derechos constitucionales por el Alto Foro es extensible a la presente causa. En su consecuencia, no procede el argumento esbozado por el recurrido a los efectos de que resulta innecesario acreditar cumplimiento del inciso (e) de la Regla 95, *supra*, el cual establece la necesidad de presentar una explicación sobre el acceso a algo no contemplado en la Regla 95, *supra*. De nuestro examen sosegado de la normativa antes expuesta, colegimos que, la Regla 95, *supra*, no necesariamente contempla la inspección ocular del hogar de una presunta víctima de agresión sexual.

Reiteramos que, ante la objeción del Peticionario a la inspección ocular del lugar de los hechos bajo el fundamento de que ello atenta contra el derecho a la intimidad de la presunta víctima, el Recurrido tenía el deber de acreditar cumplimiento de la Regla 95, inciso e, y detallar por escrito su necesidad, pertinencia y materialidad. Asimismo, el foro primario tenía el deber ineludible de así requerirlo. Al ordenar la inspección del hogar de la presunta víctima, sin antes requerir a la defensa establecer la necesidad específica y materialidad de lo solicitado, el foro primario trastocó el debido proceso de ley, así poniendo en riesgo los derechos de todas las partes involucradas.  El error señalado se cometió.

**IV.**

Por los fundamentos expuestos, se expide el auto de *certiorari* y se revoca el dictamen recurrido mediante la *Minuta-Resolución,* notificada el 25 de septiembre de 2025, dejando sin efecto la inspección ocular calendarizada para el 11 de octubre de 2025. A su vez, declaramos no ha lugar la *Urgente solicitud en auxilio de jurisdicción* y devolvemos el caso ante el Tribunal de Primera Instancia para la continuación de los procedimientos, de manera expedita, conforme lo aquí resuelto, sin tener que esperar por la remisión de nuestro mandato.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Mateu Meléndez emite un voto particular de conformidad por escrito.

Lcda. Lilia M. Oquendo Solís

Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br>PETICIONARIO<br><br>v.<br><br>LUIS MIGUEL ORTIZ BURGOS<br>RECURRIDO | TA2025CE00564 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm:<br>B IS2025G0001<br>B IS2025G0002<br>B IS2025G0003<br>B IS2025G0004<br>B LE2025G0152<br><br>Sobre:<br>Art. 130-A, C.P. (tres cargos)<br>Art. 130-H, C.P<br>Art. 59, Ley. Núm. 246-2011 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

**VOTO PARTICULAR DE CONFORMIDAD DE LA
JUEZA MATEU MELÉNDEZ**

En San Juan, Puerto Rico, a 10 de octubre de 2025.

Estando de acuerdo con la decisión de expedir y revocar la determinación recurrida, procedo respetuosamente a emitir mi voto particular conforme.

Indudablemente, el legajo apelativo evidencia que el recurrido no estableció dentro de su solicitud de descubrimiento de prueba, cómo la inspección del lugar de los hechos es esencial para su defensa. En contrario, en su *Moción al Amparo de las Reglas 95 de las de Procedimiento Criminal* se limitó sencillamente a pedir "acceso a todo objeto, tangible, estructura o lugar relevante para realizar inspección física por la abogada del acusado, para prepararse adecuadamente la defensa del acusado.". Tal falla, también fue cometida durante las vistas celebradas en el caso. En la primera de estas audiencias, en síntesis, la representación del Sr. Miguel Ortiz Burgos se

limitó a indicar que su solicitud era sobre algo pertinente.[1] Por su parte, en la segunda, solo añadió en oposición a la reconsideración del Ministerio Público que los planteamientos allí levantados eran impertinentes y prematuros, pues el asunto trataba de la etapa antes del juicio y descansa en el derecho de prepararse adecuadamente y que el asunto de la inspección ocular tenía que ver con admisión de evidencia.[2]

Emito este voto particular, con mucho respeto, más bien porque luego de escuchar la regrabación de las audiencias celebradas en el caso, estimo que es imperativo recordarle al honorable juez de primera instancia, que los jueces debemos dirigir los procedimientos judiciales con orden y decoro; y evitar todo proceder que pueda afectar la dignidad y el respeto debido al tribunal y toda expresión que pueda reflejar prejuicio de la naturaleza que sea o que pueda arrojar dudas sobre su capacidad para actuar imparcialmente.[3]

A mi juicio, el magistrado se alejó de los postulados de imparcialidad por los cuales se deben regir los procesos judiciales. Específicamente, en lugar de mantener una postura neutral limitándose a escuchar los planteamientos de las partes y resolver conforme a derecho, el magistrado en un momento, interrumpió a la abogada de defensa cuando comenzó a argumentar en contra de la reconsideración del Ministerio Público y dijo: "[…] pero licenciada [ininteligible] ya se lo estoy resolviendo antes que usted llegara a favor."[4].

Me parece que este tipo de expresiones impropias podrían dar a entender que el juez- sin haber comenzado la audiencia, ni haber atendido la reconsideración del Ministerio Público- asumió una postura en favor de la defensa. Especialmente, cuando previamente en la misma audiencia manifestó: "la discreción del tribunal es bien amplia ya en medio de un juicio, pero a nivel de solicitar una inspección ocular de parte de la defensa

---

[1] Regrabación de la vista del 11 de septiembre de 2025; 8:57-58.
[2] Regrabación de la vista del 22 de septiembre de 2025; 3:10.
[3] In re Quiñones Artau, 193 DPR 356, 381 (2015).
[4] Regrabación de vista del 22 de septiembre de 2025; 5:25-5:37.

del lugar de los alegados hechos, verdad este, **en mis 34 años de abogado siempre la han concedido.**[5]

En mi opinión, este tipo de comentarios son inapropiados, particularmente al efectuarse dentro de un procedimiento de naturaleza criminal, y utilizarlos como base para la concesión de la petición de la defensa en abstracción del derecho expuesto y aplicado en la *Sentencia* que hoy emitimos en el caso. Más aún, sin considerar que el Ministerio Público manifestó que lo solicitado era impertinente al caso, pues las circunstancias del lugar donde ocurrieron los hechos- o sea la residencia de la perjudicada- habían cambiado y ya no reflejaban la realidad del momento en que ocurrieron los actos imputados al recurrido y la intromisión indebida sobre el derecho a la intimidad.[6]

Las expresiones antes descritas, ciertamente fueron unas desafortunadas, las cuales no reflejaron la imparcialidad con la que se deben dirigir los procedimientos judiciales.

Por las razones antes descritas y toda vez que a nuestro entender el presente caso se ha resuelto conforme a derecho, emito mi voto conforme.

Ana M. Mateu Meléndez
Jueza de Apelaciones

---

[5] *Id.*, 3:36-4:06.
[6] Véase Pueblo v. Ríos Álvarez, 112 DPR 92, 106-107 (1982)